RAMIREZ, C.J.
CDC Builders, Inc., appeals the trial court’s order granting partial summary judgment. We treat this as a petition for a writ of certiorari. CDC Builders alleges that the trial court erred when it held that the filing of inaccurate interim payment affidavits in violation of chapter 713, Florida Statutes, allows for the discharge of a lien as a matter of law. We agree and therefore grant the petition.

1. Factual Background

Petitioner CDC Builders, Inc. is a general contractor. Respondents Riviera Almería, Riviera Biltmore, and Riviera Sevilla (collectively “developers”) are three entities involved in developing three parcels of property in Coral Gables, Florida. In February of 2006, CDC Builders and the developers entered into substantially similar construction agreements wherein the parties were to construct twenty-five homes/townhomes in Coral Gables, Florida. The estimated construction cost of these twenty-five units was $40,000,000.
The developers directed CDC Builders to commence construction on eight of the twenty-five homes. Midway through the construction of the eight homes, the developers, citing insufficient financing and lack of sales, exercised its contractual right to terminate CDC Builders for convenience. Although it terminated CDC Builders, the developers nonetheless requested CDC Builders to complete the construction of the eight homes already in progress. CDC Builders continued the work on the eight homes but sought convenience compensation on the seventeen cancelled homes. In January of 2008, CDC Builders filed the underlying action to recover contractual compensation for the developers’ termination for convenience. Subsequently, the developers stopped paying CDC Builders for labor, materials, and services being provided on the eight homes under construction. Both the developers and CDC Builders claim different reasons for this sudden termination of payments. The developers claim that they discovered CDC builders was overcharging its contractor’s fees and the cost of work, and therefore it was contractually entitled to hold back funds to partially recoup the overcharges. CDC Builders, however, claims that the developers withheld payment in response to the lawsuit, and further in an effort to hedge its contractual exposure for termination for convenience compensation on the seventeen cancelled homes.
CDC Builders ultimately completed all construction on the eight homes and obtained certificates of occupancy from the city of Coral Gables. Subsequent to this, CDC Builders recorded claims of lien pursuant to chapter 713, Florida Statutes (2006), in order to recover sums due to it for the work performed on the eight homes. The developers filed counterclaims alleging breach of contract, fraudulent lien, and violations of FDUTPA.[1] Both parties filed motions for summary judgment, including a motion for partial summary judgment filed by the developers. The motion for partial summary judgment, seeking discharge of CDC Builder’s claims of lien, is the subject of this appeal.
*512 In its motion for partial summary judgment, the developers claimed that CDC Builder’s submitted false interim payment affidavits in violation of chapter 713. Specifically, the developers argued that by: (1) withholding entire payments from subcontractors, and (2) keeping excess retain-age from subcontractors, CDC Builders enjoyed a surplus of money. The developers further argued that because CDC Builders had been paid in full (evidenced by the surplus of money), and because of material breaches of the Florida Lien Statutes, the liens against its properties were invalid and fraudulent under Florida Law.
The trial court found that chapter 713, when read as a whole, requires a contractor to comply with all statutory provisions, including abstaining from knowingly or intentionally filing false information about the payment status of subcontractors. Relying on evidence before it, the court found there were no questions of material fact that CDC Builders had filed false interim payment applications. Thus, the court agreed with the developers, finding the liens violated chapter 713, and its strict compliance requirement. The trial court granted the developers’ motion for partial summary judgment and discharged the hens. CDC Builders appealed this order.[2]

2. Analysis

Because we do not agree with the trial court’s interpretation and application of chapter 713, we need not address the summary judgment issue. The issue we address is whether chapter 713 allows for the discharge or invalidation of an otherwise valid construction lien, where the lienor filed an inaccurate interim payment request. Specifically, we are concerned with the deleterious impact the trial court’s interpretation of chapter 713 would have upon the construction industry as a whole.
We disagree with the trial court’s ultimate determination that CDC Builder’s actions amounted to a violation of sections 713.345 and 713.35, Florida Statutes (2006). When CDC Builders submitted the payment applications in question, it was not doing so pursuant to a statutory requirement. Rather, it did so because it was contractually required to do so.
Additionally, we do not believe CDC Builders acted incorrectly when it withheld a retainage from its subcontractors. This is because the contract between CDC Builders and the developers allowed CDC Builders to retain money from its subcontractors. Section 12.1.8 of the agreement states: “[ejxcept with the [ojwner’s prior approval, and as provided in [§ ]12.1.7, payments to [subcontractors shall be subject to retainage of not less than five (5.00%).” A plain reading of this section indicates that not only was CDC Builders allowed to withhold a retainage; it was contractually required to do so. In fact, one of the statutory sections developers rely on contemplates contractual agreements whereby one party can withhold payment. Section 713.345(l)(a) states in pertinent part: “[t]his paragraph does not prevent any person from withholding any payment, or any part of a payment, in accordance with the terms of a contract for services, labor, or materials, or pursuant to a bona fide dispute regarding the amount due, if any, for such services, labor, or materials.” At bottom, it seems that the developers had sufficient knowledge as to the issue of retainage, whether or not it was expressly stated in the interim payment requests.
*513 However, even if this Court agreed with the trial court’s factual determination, such violations would only justify criminal sanctions as outlined in the statute. Therefore, while a violation of either section 713.345 or section 713.35 would expose an individual to criminal sanctions, we cannot agree with the trial court that either statute — or chapter 713 interpreted as a whole — would justify the discharge or invalidation of an otherwise valid lien. In fact, in its order discharging the liens, the trial court acknowledges that neither section 713.345 nor section 713.35 allow for discharge. Referring to section 713.35, the trial court stated “[tjhere is no language or provision contained therein which would mandate this [cjourt finding that the ultimate claims of lien filed herein, because the interim payment affidavits were false, necessitate the discharge of the liens for noncompliance. The same analysis holds true for section 713.345.” Instead, the trial court relied on its interpretation that chapter 713, when read as a whole, “requires a contractor to comply with all provisions contained therein.” However, this interpretation neither comports with the statutory language nor with precedent in this state.
Section 713.37 expressly states that Part I, chapter 713 “shall not be subject to a rule of liberal construction in favor of any person to whom it applies.” See also Zalay v. Ace Cabinets of Clearwater, Inc., 700 So.2d 15 (Fla. 2d DCA 1997) (echoing the language of section 713.370). Additionally, as the Florida Supreme Court stated in Home Electric of Dade County, Inc. v. Gonas, 547 So.2d 109, 110 (Fla.1989), “[construction] liens are purely creatures of the statute” and as a “statutory creature, the [construction] lien law must be strictly construed.”
This Court is well aware of the impact this decision could have on the construction industry as a whole. If we were to agree with the trial court, the purpose of liens would be undercut as hens could be subject to attack for inaccuracies or simple mathematical errors. This is not what the legislature intended when it enacted the construction lien law, and therefore it is not an outcome this Court can allow. Recently, in Trytek v. Gale Industries., Inc., 3 So.3d 1194, 1199 (Fla.2009), the Florida Supreme Court reaffirmed the dual purpose of the Construction Lien Law. First, “[construction] liens protect suppliers who furnish labor or material to the property by assuring them of full payment.” Second, construction liens protect “owners by requiring subcontractors to provide notice of possible liens, thereby allowing owners to prevent double payment to both a contractor and a subcontractor, material supplier, or laborer, for provision of the same services or materials when the contractor and subcontractor are not in privity.” See also Fla. Steel Corp. v. Adaptable Devs., Inc., 503 So.2d 1232, 1234 (Fla.1986) (stating one of the principal purposes of the Construction Lien Act is to “prevent[ ] the unjust enrichment of owners at the expense of lienors”). Adherence to the trial court’s opinion would frustrate the first purpose outlined in the Trytek opinion. In essence, contractors could lose protection by committing errors in calculations, submitting inaccurate payment claims, or as in this case adhering to contractual duties.

3. Conclusion

Because the contract binding the parties expressly provided that CDC Builders could withhold a retainage from its subcontractors, and because developers had copies of the contracts between CDC Builders and the subcontractors, we find developers had sufficient knowledge that CDC Builders was withholding said retainage. Additionally, we hold the trial court incorrectly applied chapter 713 when it held that the *514 filing of inaccurate payment claims warrants the discharge of any subsequent liens. To agree with the trial court’s application of the statute would mean that otherwise valid liens would violate the lien law. This would go against the spirit and purpose of Florida’s Construction Lien law.
Petition for writ of certiorari granted.

. Florida Deceptive and Unfair Trade Practices Act.

. On July 21, 2010, this Court treated the Notice of Appeal and the Initial Brief as a Petition for Writ of Certiorari.